1
**ROBERT MANN**, SBN 48293
2
**DONALD W. COOK**, SBN 116666
ATTORNEYS AT LAW
3
E-Mail: doncook@earthlink.net
3435 Wilshire Boulevard., Suite 2900
4
Los Angeles, California 90010
Telephone: (213) 252-9444
5
Facsimile: (213) 252-0091

6
**CYNTHIA ANDERSON-BARKER**, SBN 175764
7
LAW OFFICE OF CYNTHIA ANDERSON-BARKER
E-Mail: cablaw@hotmail.com
8
3435 Wilshire Blvd., Suite 2900
Los Angeles, CA 90010
9
(213) 381-3246

10
**ELLEN HAMMILL ELLISON**, SBN 141429      **OLU ORANGE**, SBN 213653
11
LAW OFFICE OF ELLEN HAMMILL ELLISON       ORANGE LAW OFFICES
E-Mail: ellenellison1116@yahoo.com        E-Mail: o.orange@orangelawoffice.com
12
3435 Wilshire Blvd., Suite 2900           6080 Center Drive, Sixth Floor
Los Angeles, California 90010             Los Angeles, California 90045
13
(213) 365-8225                            Telephone: (310) 815-8600
                                          Facsimile: (775) 416-9221
14

15
Attorneys for Plaintiffs

16
## UNITED STATES DISTRICT COURT

17
## CENTRAL DISTRICT OF CALIFORNIA

18
                                          CV 07 3469 ODW (SHx)

19
Martin Gonzalez, Sr., Martin Gonzalez,    Case No.
Jr. and Jose Gonzalez, Martha
20
Hernandez, Krystal Hernandez, Monique     **CIVIL RIGHTS and RICO**
Paniagua, Jose Quinones, Jesse Castro,    **COMPLAINT WITH INJUNCTIVE**
21
Marco Guillen, Jose Molina, Vanessa       **AND STATE LAW CLAIMS**
Garcia, Shannon Board, Manual Herrera,
22
Humberto Herrera, Gerardina Herrera,      **DEMAND FOR JURY TRIAL**
Freddie Barajas, Marvin Tejeda, Jesus
23
Jimenez, Eder Jimenez, Jordan Payan,
and Henry Fuentes,
24
                Plaintiffs,
25

26
vs.

27
City of Maywood, Maywood-Cudahy
Police Department,  Bruce Leflar, Paul
28
Pine, Daniel Martinez, Officers

FILED 2007 MAY 29 PM 2:42 CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. LOS ANGELES


DOCKETED ON CM
JUN - 5 2007
BY _____ 185

-1-

00021048.WPD



```
5/29/2007 3:02:45 PM Receipt #: 96404
Paid by: Cashier 2009YSA LLA 1-L]
2:07-CV-83469        HANN!
2007-806908      ___
2:CRUD -83469    S.=] Civil Filing Fee(1)
2007-51000B      ___                    $60.00
Amount          [L-]
2:CVD-83469      [-- ]Special Fund F/F(1)
2007-806408      :-:                   $190.00
Amount :         ---
Check Payment : 416Y/    Filing Fee - Special(1)
                                       $100.00
                                        350.00
```

Menchacca, Cunningham, Serrata,
Nijland, Leach, Acevedo, Muriello,
Serrata, Alvarez, Viscarra, Emil, Urbina
and Does 1-30,

Defendants.

## INTRODUCTION

1. This is a RICO and civil rights action brought under 42 U.S.C. §§1983 and 1985 and various related state laws by plaintiffs against the City of Maywood, the Maywood-Cudahy Police Department, and their employees individually and in their official capacities, for injunctive relief and compensatory and punitive damages because of a continuing systematic abuse of authority, including but not limited to unlawful searches and seizures of person and property; wrongful detentions and arrests, false imprisonments, malicious prosecutions, cover ups, false report writing, use of excessive and unnecessary force, sexual assaults and other acts of lawlessness.

## JURISDICTION

2. Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1343, and arises under 18 U.S.C. § 1961, and 42 U.S.C. §§1983 and 1985.

3. The acts and/or omissions complained of occurred in the Central District of California, and in the Western Division, and therefore venue lies in this District pursuant to 28 U.S.C. 1391 and in the Western Division pursuant to general orders of this Court.

4. Plaintiffs were victims of City of Maywood employees acting under color of law and within the scope of their authority and pursuant to the policies and practices of the entities.

## DEFENDANTS

5. At all times herein mentioned defendants City of Maywood, the Maywood-Cudahy Police Department, and Does 1 through 5, were and are public entities duly

00021048.WPD

1   organized and existing as such under the laws of and within the State of California under

2   the laws of the United States and the laws of the State of California.

3        6.   At all times herein mentioned defendants Bruce Leflar, Paul Pine, and Does

4   were and/or are police supervisors and/or policymakers for the City of Maywood, the

5   Maywood-Cudahy Police Department and Does 6 through 15, and in such capacity

6   were/are managers and/or chief administrators and/or policy makers.  The named entities,

7   supervisors and Does are responsible for, among other things, the employment, discharge,

8   training, supervision, control, assignment and discipline of all sworn and civilian personnel

9   of their entities and the formulation, promulgation, adoption, application, implementation,

10   administration, enforcement and revocation of the policies and practices of the named

11   entities and Does.

12        7.   The actions of named and Doe supervisors were committed while employed by

13   the entities and represent the customs, practices and policies of the entities.  The acts

14   herein described and complained of were committed and done pursuant to policies, rules,

15   regulations, practices, customs, and/or usages [hereinafter "policies and practices"] of the

16   entities and were created and enforced by the managers and/or supervisors and/or policy

17   makers.

18        8.   Plaintiffs are informed and believe and based thereon allege the defendants

19   Maywood-Cudahy Cadet Daniel Martinez, Maywood-Cudahy Officers Menchacca,

20   Cunningham, Serrata, Nijland,  Leach, Acevedo, Muriello, Alvarez, Viscarra, Urbina,

21   Emil and Does are individual officers employed by Maywood-Cudahy Police Department

22   at the times of the acts herein complained of.

23        9.   The true names and capacities of defendants Does 1-30 are presently unknown

24   to plaintiffs; who therefore sue each of these defendants by such fictitious names; but

25   upon ascertaining the true identity and/or liability of a defendant Doe, plaintiffs will

-3-

00021048.WPD

amend this Complaint or seek leave to do so by inserting the true name in lieu of the fictitious name.  Plaintiffs are each informed and believe and based thereon allege that each defendant Doe herein is in some manner responsible for the injuries and damages herein complained of.

## INCORPORATION

10.  Paragraphs 1-9 above are hereby repeated, realleged and incorporated by this reference in each cause of action.

## FACTS

### The Maywood Police Department

11.  Plaintiffs are informed and believe and thereon allege that the Maywood-Cudahy Police Department has for years been a renegade, largely out-of-control "gang" that routinely tramples the rights of those unfortunates who come under its oppressive thumb.

12.  Plaintiffs are informed and believe and thereon allege that the defendants preyed especially upon recent immigrants because defendants knew that recent immigrants were easy victims, afraid to exercise their rights, and readily subject to retaliation if they attempted to exercise their rights.

13.  Plaintiffs are informed and believe and thereon allege that the violations of individuals' rights by Maywood-Cudahy officers occurred not because of a few "bad apples" but is instead the result of a culture of lawlessness permeating the entities and constituting and/or proximately caused by their routine practices.

14.  Plaintiffs are informed and believe and thereon allege, based in part upon reports in the April 1, 2007,Los Angeles Times, that the Maywood-Cudahy police department has become

a haven for misfit cops who have been pushed out of other law enforcement

00021048.WPD

agencies for crimes or serious misconduct. Among those on the job: A former Los Angeles County sheriff's deputy terminated for abusing jail inmates; a onetime Los Angeles Police Department officer fired for intimidating a witness; and an ex-Huntington Park officer charged with negligently shooting a handgun and driving drunk. Other officers were hired by Maywood after flunking out of training programs elsewhere. . . .

In all, at least a third of the officers on the force have either left other police jobs under a cloud or have had brushes with the law while working for Maywood. Several officers in recent years have left Maywood after being convicted of crimes. Even the newly appointed police chief has a checkered past: He was convicted of beating his girlfriend and resigned from the El Monte Police Department before he could be fired. . . .

The brewing scandal has included accusations that police and city leaders were on the take from the owner of a local tow company; that a longtime officer was extorting sex from relatives of a criminal fugitive; that a police officer tried to run over the president of the Maywood Police Commission in the parking lot of City Hall; that an officer impregnated a teenage police explorer; and that officers had covered up the truth surrounding a fatal police shooting that resulted in a $2.3-million legal settlement. The Los Angeles County district attorney, the California attorney general and the Federal Bureau of Investigation have active probes into the Maywood department.

. . .

00021048.WPD

... Maywood has been slow to adopt policing practices in place at bigger departments, which are aimed at ensuring professional conduct and increasing public trust. . . .

[S]upervisors at the department don't always see the need for documenting citizens' complaints, a practice mandated at other agencies. . . .

Officers are also permitted to carry a leather-encased, lead-filled hand weapon, known as a sap, which many agencies have outlawed because of the brutal injuries they can inflict.

"Everything that could go wrong seems to have gone wrong at Maywood," said lawyer Merrick Bobb, a law enforcement expert who has consulted with the U.S. Department of Justice on policing practices. "This department needs to be put into receivership."

15. Plaintiffs are informed and believe and thereon alleged, based in part upon allegations contained in a Superior Court complaint filed by Maywood-Cudahy Officer Pablo Cunningham, one of the named defendants in this action, that supervisors required officers to "engage in racial profiling and quotas," and that Cunningham was "threatened by [ Police Chief Bruce] Leflar with loss of his job after he refused to engage in racial profiling."

16. Plaintiffs are informed and believe and thereon allege, based in part upon allegations contained in a Superior Court complaint filed by Cunningham, that the defendants covered up misconduct including excessive force, promoted a "code of silence," hired people unfit to be officers (for improper reasons, including but not limited

00021048.WPD

1  to their connections to other City officials), extorted people for sex, and took kickbacks.

2  According to Cunningham's Superior Court complaint:

> The [final police] report by Maywood left out vital information that
> Cunningham had put into his report. Specifically, there was a woman who
> witnessed the actions of the police officers, beating and then shooting the
> suspect. Cunningham included that information and her opinion that the
> police did not need to engage in that type of force. The police department
> concealed this information as part of a "code of silence" and to deprive the
> victim's family of all of the information concerning the defendants' use of
> excessive force. . . .

> This alteration of police reports is part of pattern and practice of Maywood
> Police Department under Chief Leflar to allow alteration of reports. . . .

> Leflar also hired an officer Garcia from Huntington Park Police Department,
> after the Officer was arrested and plead to four misdemeanors involving
> alcohol and firearms, including shooting from his car. Garcia was friend of
> councilman Lara's. . . .

> In 2005, Cunningham observed Councilman Louis Lara strike a boy who
> was a prowler in the Councilman's yard. The boy man had been arrested
> and was in the police car. Lara opened the door of the police car and
> punched the boy twice in the face, causing him to bleed. The boy was
> approximately 14 or 15 years old and was in handcuffs when Lara engaged
> in this cowardly act. Sergeant Richardson was on scene at the time that Lara

00021048.WPD

struck the boy. Richardson claimed that he spoke with Chief Bruce Lefler, but no other known action was taken.

. . . Lt. Pine was living in the city in an apartment owned by the owner of the tow yard. Plaintiff was vocal about Officers taking kick-backs (free cars, cash, free trips to Las Vegas etc.) from the tow yard owner in exchange for vehicle impounds. . . . Pine accused plaintiff. . . in retaliation for plaintiff's whistleblower activities. . . .

Cunningham also reported in 2005 sexual misconduct by Officer Mesa and Sergeant Leach. Leach was accused by members of the public of extorting sex from a transsexual, in return for letting her fugitive brother in and out of the country. This was discovered during a pursuit of Sergio Castro. The father of Sergio Castro complained that Leach broke his word of allowing Sergio into the Country in exchange for sex with the transvestite or transsexual son, Eduardo Castro (aka Lariz).

17. Plaintiffs are informed and believe and thereon allege that official public records document that Pine resided in an apartment owned by the proprietors of the tow yard. Plaintiffs are informed and believe that the tow yard is Maywood Club Tow.

18. Plaintiffs are informed and believe that Pine was permitted to live in the apartment as a quid pro quo for Pine's assistance in causing the towing, impoundment, and sale of vehicles, for the illicit gain of Pine, the City of Maywood, the Maywood-Cudahy Police Department, and others.

19. Plaintiffs are informed and believe and thereon allege that Maywood Club Tow and/or its owners gave money and/or things of value to defendants as a quid pro quo for the assistance and cooperation of defendants in causing the towing, impoundment, and

00021048.WPD

1  sale of vehicles.

2      20. Plaintiffs are informed and believe that the Cities of Maywood and Cudahy and

3  the Maywood-Cudahy Police Department did a land-office business with Maywood Club

4  Tow, towing, impounding, confiscating, and selling vehicles, and reaping huge profits in

5  doing so, and that Pine and other defendants were personally involved in this illicit,

6  fraudulent and criminal practice, including the conduct of supposed hearings to determine

7  whether vehicles should be returned to their owners.  The involvement of defendants

8  including Pine in the hearings made them unfair and deprived vehicle owners of due

9  process of law. Plaintiffs are informed and believe and thereon allege that existence of

10 graft and corruption, and the knowledge of the graft and corruption, within the Maywood-

11 Cudahy Police Department and the City of Maywood, including but not limited to the

12 illicit, fraudulent and criminal scheme to tow, impound and sell vehicles, has made it

13 difficult and/or impossible for any supervisor to exercise meaningful supervision and/or

14 to discipline officers who abused people and violated the law, for fear that officers would

15 blow the whistle on the corruption and nepotism including but not limited to the vehicle

16 towing scheme, if any meaningful discipline were threatened or imposed.

17     21. Plaintiffs are informed and believe that the absence of meaningful supervision

18 and discipline was a proximate cause the constitutional violation against Plaintiffs.

19     22. Plaintiffs are informed and believe that the governing officials of the City of

20 Maywood  received money and/or things of value from Maywood City Tow and/or its

21 owners, as a quid pro quo for, among other things, starting, continuing, implementing

22 and/or protecting defendants' illicit vehicle towing scheme.

23     23. Plaintiffs are informed and believe and thereon allege that the Maywood-

24 Cudahy Police Department does not have adequate procedures to supervise and/or

25 discipline its employees, including but not limited to the following:

00021048.WPD

a. Inadequate reporting requirements, including but not limited to inadequate use-of-force reporting;

b.   Inadequate procedures for documenting and investigating citizens' complaints, including but not limited to refusing to accept citizens' complaints, failing adequately to documents citizens' complaints, failing to investigate citizens' complaints, and failing to respond to court orders requiring defendants to disclose citizens' complaints.

24.   Failures by all the supervisor, manager and policy-making defendants to provide oversight over the Maywood-Cudahy police, to make them follow the requirements of the Constitution, and/or to stop officers from making false charges against innocent persons and lying to support false charges, among other things, make those defendants liable to plaintiffs.

25. Plaintiffs are informed and believe that all the injunctive relief prayed for in this complaint is necessary to stop the wide-scale violation peoples' rights by defendants.

**Plaintiffs**

*Pablo Camarillo* – May 28, 2005

26.   On May 28, 2005 Pablo Camarillo was wrongly detained, arrested, assaulted, battered, threatened, searched, had false reports written against him for the purpose of malicious prosecution as condoned by the policy of "hurt a man, charge a man," and suffered unlawful entry into his home at 4737 East 57th Street, Maywood, by Cunningham and other unknown police officers who struck his head with flashlights and/or guns, kicked and/or punched him in the rib cage, threw him against his car on his property, with an officer, who described himself as a field supervisor, watching.  Cunningham struck Pablo Camarillo in the face breaking his nose while he was handcuffed sitting in the patrol car.  Mr. Camarillo's father and girlfriend witnessed this.  Cunningham destroyed Mr.

00021048.WPD

Camarillo's stereo equipment and swore at him constantly, referring to Mr. Camarillo as a "wetback." Mr. Camarillo was taken to the hospital on the recommendation of the paramedics who determined he needed hospital care. Cunningham came to Camarillo's home the next day. Officers West, Florez and Vizcarra were participants in the above conduct. Mr. Camarillo made a complaint about the incident and was never notified of the outcome. Mr. Camarillo was required to post $5,000 bail.

*The Herreras* – July 30, 2005

27. On approximately July 30, 2005 plaintiffs Manual Herrera, Humberto Herrera and Gerardina Herrera were wrongfully detained, arrested, searched, assaulted, battered, had false reports written against them for the purpose of malicious prosecution as condoned by the policy of "hurt a man, charge a man," and suffered unlawful entry into their home at 4615 East 58th Street in Maywood, by Detective Serrata and other unknown Maywood-Cudahy police officers. Martian Herrera told plaintiffs that someone was in the yard with a gun, maybe police. Detective Serrata was in plaintiffs' yard in plain clothes pointing a gun at plaintiffs. He did not identify himself as a police officer. As Serrata backed out of the yard and shut the gate he pointed his gun at plaintiffs. More police arrived. Serrata reentered plaintiffs' yard. Serrata and other unknown Maywood-Cudahy police officers threw Manual and Humberto to the ground, handcuffed them, used abusive language, told them to shut up when they asked why this was happening, struck them while handcuffed, threw Manual against the police car when recognized by Serrata as someone Serrata had ticketed a few weeks before. Serrata and 5 to 8 other unknown officers unlawfully entered plaintiffs' home. Gerardina Herrera was screaming for police to stop hurting her son and husband. Police pointed guns at plaintiffs. Gerardina Herrera was thrown onto her couch by police, handcuffed and told to shut up. Humberto was humiliated in front of his neighbors when Serrata and other unknown police officers

00021048.WPD

walked Humberto around the neighborhood in his underwear. Manual and Humberto Herrera were acquitted on felony charges falsely made by Serrata and other police officers after having to post bail of $25,000.00.

*The Gonzalez Family* – July 2, 2006

28. On July 2, 2006 plaintiffs Martin Gonzalez, Sr., Martin Gonzalez, Jr. and Jose Gonzalez were wrongfully detained, arrested, assaulted, battered, threatened, searched, written up in false reports for the purpose of malicious prosecution as condoned by the policy of "hurt a man, charge a man" and suffered unlawful entry into their home at 3818 ½ 58th Street, in Maywood, California by Maywood-Cudahy police cadet Daniel Martinez, Maywood-Cudahy police officer Menchacca and other unknown Maywood-Cudahy police officers. The assaults on these plaintiffs included pointing of firearms at them, tasers used on Martin Gonzalez, Jr., punches to all parts of his body including the head while handcuffed, tackled to the ground, and hogtied. Martin Gonzalez Jr. was wrongfully incarcerated for four days and denied adequate medical care.

*Hernandez, Paniagua & Quinones* – September 2, 2006

29. On September 2, 2006 plaintiffs Martha Hernandez, Krystal Hernandez, Jose Quinones and Monique Paniagua were wrongfully detained, arrested, assaulted, battered, threatened, searched, written up in false reports for the purpose of malicious prosecution as condoned by the policy of "hurt a man, charge a man" and suffered unlawful entry into their home at 5113 East 60th Street, Maywood, California by Officers Cunningham and Serrata and other unknown officers. 14-year-old Krystal Hernandez was sexually molested and fondled in front of her mother Martha Hernandez, by Cunningham and Serrata and other unknown officers. The assaults on these plaintiffs included the drawing and pointing of firearms at them, painfully tight handcuffing, choking, and beating on the ground. Ms. Paniagua was thrown into the back of the police car. Jose Quinones was denied adequate

-12-

00021048.WPD

1   medical care for his injuries suffered from repeatedly being kneed in the genitals.

2       *Jose Molina* – September 4, 2006

3       30.  On September 4, 2006 in the City of Cudahy, California at 5106 1/4 Live Oak

4   Street Jose Molina was wrongfully detained, arrested, assaulted, battered, threatened,

5   written up in false reports for the purpose of malicious prosecution as condoned by the

6   policy of "hurt a man, charge a man' and searched by Officers Cunningham, Menchaca,

7   Sgt. Nijland and other unknown officers in Maywood-Cudahy Police uniforms. The force

8   used upon Mr. Molina included being thrown to the ground, having his face dragged on

9   the ground, being struck in the face and ribs while his arms were held down, while falsely

10  being accused of being in a gang. Supervising Sgt. Nijland was present for and observed

11  and/or participated in the above-described conduct.

12      *Barajas, Tejeda, Jimenez, & Payan* – January 5, 2007

13      31.  On January 5, 2007 Freddie Barajas, Jesus Jimenez, Marvin Tejeda, Eder

14  Jimenez and Jordan Payan were at 3551 East 53rd Street in Maywood, and were wrongly

15  detained, arrested, assaulted, battered, threatened, searched, had false reports written

16  against them for the purpose of malicious prosecution as condoned by the policy of "hurt

17  a man, charge a man," and suffered unlawful entry into their home by Maywood-Cudahy

18  police officer Alvarez and other unknown police officers numbering between five and

19  eight. Eder Jimenez obviously suffers from Downs Syndrome and was particularly

20  traumatized by the police. Tickets were written for obstructing the sidewalk when none

21  of these plaintiffs were on the sidewalk until police ordered them there. The police

22  screamed at these plaintiffs, forced them to the ground, and falsely accused them of

23  having weapons, drugs and being gang members.

24      *Jesse Castro and Marco Guillen* – January 21, 2007

25      32.  On January 21, 2007 near intersection of 52nd Street and Loma Vista in

-13-                                    00021048.WPD

Maywood, California Jesse Castro and Marco Guillen were wrongfully detained, assaulted, battered, threatened,   searched, and suffered unlawful entry into their automobile by seven or eight unknown officers in Maywood-Cudahy Police uniforms. The force used upon these plaintiffs included using a flashlight and/or baton to strike the window of the car they were in, drawing and pointing of firearms at them, being dragged out of the car, kicked, threatened with death, followed by a Maywood police vehicle and two refusals by Maywood Police Department desk officers to take a written complaint about the incident.

*Vanessa Garcia & Shannon Board* – February 5, 2007

33.  On February 5, 2007, at 4351 East 55th Street, Maywood, Vanessa Garcia and Shannon Board were wrongfully harassed, detained, arrested, assaulted, battered, threatened with malicious prosecution, searched and sexually assaulted by Officer Muriello who threatened to plant drugs on them and take them to jail if they continued to voice complaints to him. Officer Muriello called Ms. Garcia on her telephone later that day and told her he wanted to have sex with her and that he was coming over with beer. He said she had to participate or he would take her to jail.  Officer Muriello drove by Ms. Garcia's home 2-3 times a day after that and repeatedly told them he would take her and Ms. Board to jail. Subsequently Muriello did bring beer to Ms. Garcia's home and groped Ms. Board's breast and grabbed Ms. Garcia's crotch when they stood near his police car. The next day Muriello stopped Ms. Garcia, had her place her hands behind her back and put his hand down her pants touching her buttocks and her vagina. Ms. Board witnessed this from inside.  The next day Muriello came to Ms. Garcia's home in plain clothes, followed Ms. Garcia into her apartment, tried to get her and her son to come into the bedroom, kissed her against her will and left with a smirk on his face. The next day, February 14, 2007 Muriello called Ms. Garcia several times at home.  On February 15,

-14-

00021048.WPD

2007 Muriello came into Ms. Garcia's apartment again, kissed her against her will and left when a friend pulled into her driveway. After that Muriello called Ms. Garcia and Ms. Board and told them he wanted to have sex with them at the same time. Both women left Maywood for several weeks for fear of their safety as a result of Muriello's conduct. On March 7, 2007 Muriello encountered Ms. Garcia and Ms. Board who by then had returned to Maywood and repeated his threats and desires to them. They were never taken to jail or charged but live in fear of Officer Muriello.

*Henry Fuentes* – March 28, 2007

34.   On March 28, 2007 in front of his home on 58th Street, Maywood, Henry Fuentes was wrongfully detained, assaulted, battered, threatened, and written up in false reports for the purpose of malicious prosecution as condoned by the policy of "hurt a man, charge a man," by Officer Urbina The entire incident was witnessed by Mr. Fuentes five small children, aged four up to twelve. The children were very frightened and cried during the incident. On that day, Officer Urbina's vehicle was blocking Mr. Fuentes driveway. Mr. Fuentes asked Officer Urbina to move it because there were no parking spaces on the street and he had his five children in the car. Urbina refused. Mr. Fuentes then drove up his neighbor's driveway and across his own grass into his own driveway and parked. Urbina walked up to Mr. Fuentes, forcefully twisted his arm behind his back and threw him against the police car. Urbina then handcuffed Mr. Fuentes and placed him in the police car for about one hour. After that, Mr. Fuentes gave Officer Urbina his driver's license upon request. Urbina asked Mr. Fuentes if he would rather have a ticket or go to jail. Mr. Fuentes opted for the ticket and received one for "driving on the sidewalk." Officer Urbina then told Mr. Fuentes to go inside his house or Urbina would arrest him. Mr. Fuentes later sought medical treatment at a clinic for the injury to his arm.

35.   Defendants' wrongful conduct included but is not limited to fraud, fraud by

00021048.WPD

wire, obstruction of justice, kidnaping and bribery.

36.  Plaintiffs are informed and believe there are numerous other similar victims of defendants' wrongful acts who are afraid to seek, and/or unable to seek redress because of their reasonable fears of retaliation, and/or because they are recent immigrants who are reasonably concerned about the lawfulness of their status, and/or because they are unable to find representation.

37.  Plaintiffs complied with the provisions of the California Tort Claims Act.

## DAMAGES

38.  By reason of the aforementioned acts of defendants, and each of them, plaintiffs were injured in their health, strength and activity, sustained great mental pain, suffering and shock to their nervous systems, torment, anxiety, anguish, humiliation and severe emotional distress, all to their damage in an amount according to proof at trial.  As a proximate result of the foregoing wrongful acts of defendants, and each of them, property belonging to plaintiffs was damaged and destroyed in an amount according to proof.

39.  By reason of the aforementioned acts of defendants and each of them, plaintiffs were and/or will in the future be required to receive hospital, medical, doctor, nursing, dental and psychological care and treatment, and by reason thereof, will incur expenses related thereto in an amount according to proof at trial.

40.  By reason of the aforementioned defendants and each of them, plaintiffs were injured in their businesses and/or property, including but not limited to being unable to work, and sustained and will in the future be injured in their businesses and/or property by sustaining a loss and impairment of earnings and earning capacity, in an amount according to proof at trial.

41.  Defendants acts were done and committed by each individual defendant

knowingly, deliberately and maliciously with the intent to oppress, injure and harass plaintiffs [with the exception of the claims by plaintiff based on negligence] and with reckless indifference to civil rights, personal security and safety of these plaintiffs; and by reason thereof, plaintiffs pray for punitive and exemplary damages from and against individual defendants and each of them in an amount according to proof at trial.

### FIRST CAUSE OF ACTION
### 42 U.S.C. §1962
### ["RICO" – Violations of 42 U.S.C. §§ 1962 (C) and (D)]
### (Against All Defendants)

42. This cause of action is brought by all plaintiffs for treble damages for injury to their business or property including but not limited to lost employment and accrued interest resulting from the conduct alleged herein, which violates the provisions of 18 U.S.C. §§ 1961-1968 (hereafter "RICO").

43. The following constitute an enterprise within the meaning of RICO generally and 18 U.S.C. § 1961(4) specifically:

    a. The Maywood-Cudahy Police Department;

    b. The City of Maywood;

    c. Maywood Club Towing Company;

    d. The Association in Fact of defendants City of Maywood, Maywood-Cudahy Police Department, Maywood Club Towing Company ("the AIF Enterprise").

44. Plaintiffs are informed and believe and thereon allege that each enterprise alleged herein is an entity distinct from the pattern of racketeering activity alleged herein; is or was an ongoing organization, formal or informal; and functions or functioned as a continuing unit, to wit:

    a. The City of Maywood is a public entity with a formal structure and

-17-

00021048.WPD

capacity engaging in a wide range of activities, only part of which entails the pattern of racketeering activity alleged in this complaint. The defendants charged with operating it under 42 U.S.C. § 1962 (c) were animated by, among other things, engaging in bribery.

b. The Maywood-Cudahy Police Department is a subdivision of the City of Maywood and City of Cudahy whose charge is enforcement of the laws of the State of California and the Cities of Maywood and Cudahy, in which capacity it has a formal structure and engages in a wide range of activities, only part of which entails the pattern of racketeering activity alleged in this complaint. The defendants charged with operating it under 42 U.S.C. § 1962 (c) were animated by, among other things, bribery, extortion, and kidnaping.

c. Maywood Club Towing Company is a formally organized business entity engaged in the business of towing and impounding vehicles under a variety of circumstances, only part of which entails the pattern of racketeering activity alleged in this complaint. The defendants charged with operating it under 42 U.S.C. § 1962 (c) were animated by, among other things, the common purpose of unlawfully impounding vehicles in order to collect and receive the illegal charges resulting from the impound, and implemented the illegal scheme by mail fraud and bribery.

d. The AIF Enterprise had an ascertainable structure, comprised of the Maywood-Cudahy Police Department, Maywood Club Towing Company, and the key individuals who directed the enterprise's unlawful activities which included but are not limited to Pine and Does. This structure was distinct from the pattern of racketeering activity in that the enterprise's activities encompassed both lawful and unlawful activities. The AIF Enterprise's associates were animated by common purposes, including to unlawfully and fraudulently impound vehicles in order to

00021048.WPD

collect and receive the illegal charges resulting from the impound and receive kickbacks. The AIF Enterprise functioned as a continuing unit with continuity in both structure and personnel.

45. The activities of the enterprises affect interstate commerce in numerous ways, including but not limited to: 1) the use of interstate mail and telephone; 2) the purchase of materials for use in the enterprises which materials were in the stream of interstate commerce; 3) the provision of federal funds to the Maywood-Cudahy Police Department, received through the stream of interstate commerce; 4) oversight by federal governmental entities of various of the activities of the Maywood-Cudahy Police Department and/or the City of Maywood, involving interstate travel and the expenditure of funds through the stream of interstate commerce; 5) the interstate travel of various of the owners of impounded vehicles to retrieve their impounded vehicles or attempt to do so; 6) the travel, paid from proceeds of the pattern of racketeering activity alleged herein, of members of the Maywood-Cudahy Police Department from California to Las Vegas; 7) the purchase of tow trucks, and gasoline and equipment for said trucks, used in furtherance of the pattern of racketeering activity alleged herein that reached the purchasers through the stream of interstate commerce.

### SECOND CAUSE OF ACTION
### (Violation of Civil Rights - 42 U.S.C. § 1983)
### *Monell* and Supervisorial Liability

46. Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, above named defendants with deliberate indifference, gross negligence and/or reckless disregard for the safety, security and constitutional and statutory rights of plaintiffs maintained, enforced, tolerated, permitted, acquiesced in, and/or applied *inter alia* policies and practices which included directing and controlling the unlawful acts complained of herein.

-19-

47.   Said defendants and each of them, acting under color of state law, have deprived plaintiffs of rights, privileges, and immunities secured by the Constitution and laws of the United States, in particular by the First, Fourth, Fourteenth Amendments to the United States Constitution by *inter alia* maintaining, enforcing, tolerating, permitting, acquiescing and, and/or applying the policies and practices set forth above.  As a direct and proximate result of those policies and practices, plaintiffs have sustained injury and damage as described herein.

48.   Plaintiffs are informed and believe and thereon allege that the supervisorial defendants ordered, authorized, acquiesced in, tolerated, or permitted other defendants herein to engage in the unlawful and unconstitutional actions, policies, and practices set forth above.   Defendants' conduct alleged herein constitutes a pattern of illicit law enforcement behavior, and statutory and constitutional violations based either on a deliberate plan by defendants or on defendants' deliberate indifference, gross negligence, or reckless disregard for the safety, security and constitutional and statutory rights of plaintiffs which violations include:

a.   Stopping, detaining, and/or arresting people and/or entering homes, and/or searching and/or seizing property and people, without required warrants, reasonable suspicion and/or probable cause;

b.   Using unreasonable and/or excessive force;

c.   Allowing and/or encouraging employees to brutalize, hurt and/or injure members of the public, by failing to require effective use-of-force training, supervision, discipline and reporting, including but not limited to not requiring employees to report uses of force, by permitting and/or encouraging false and/or misleading and/or incomplete reporting, and/or by failing adequately to monitor employee uses of force;

00021048.WPD

d.  Condoning, tolerating and/or acquiescing in officers' engaging in racist conduct and/or racially motivated attacks on minority members of the community, and/or using racist speech when speaking with minorities and/or denigrating the race and/or nationality of minority members of the community;

e.  Condoning, tolerating and/or acquiescing in officers' sexually abusing members of the community, including minors;

f.  Failing adequately to investigate incidents involving the use of unreasonable force and/or other misconduct;

g.  Conducting investigations in such a manner as to conceal misconduct, including but not limited to using investigative techniques and procedures known to have that effect;

h.  Condoning and encouraging the fabrication of evidence including but not limited to the filing of materially false police reports;

i.  Condoning and encouraging a "code of silence,"  which keeps and/or dissuades law-abiding employees from reporting the misdeeds of fellow employees;

j.  Condoning and encouraging officers in the belief that their failure or refusal to participate in the "code of silence" or to cover up or conceal the misconduct of other officers will cause them to be ostracized by other officers, will adversely affect their ability to get support from other officers in life-threatening situations in the field and will adversely affect their opportunities for promotion and other employment benefits;

k.  Condoning and encouraging the acceptance of "gratuities," "kickbacks," and/or other wrongful and/or illicit compensation, which has the effect of making supervisors within the department vulnerable to accusations of misconduct and unable and/or unwilling to effectively supervise and/or discipline subordinates.

00021048.WPD

49.   Defendants and each of them, acting under color of state law, have deprived plaintiffs of rights, privileges, and immunities secured by the Constitution and laws of the United States, in particular by the First, Fourth, and Fourteenth Amendments to the United States Constitution by *inter alia* maintaining, enforcing, tolerating, permitting, acquiescing and, and/or applying the policies and practices set forth above.  As a direct and proximate result of those policies and practices, plaintiff has sustained injury and damage as described hereinafter.

50.   Plaintiffs are informed and believe and thereon allege that defendant entities and supervisorial defendants ordered, authorized, acquiesced in, tolerated, or permitted other defendants herein to engage in the unlawful and unconstitutional actions, policies, and practices set forth above.  Defendants' conduct alleged herein constitutes a pattern of intimidation, illicit law enforcement behavior, and statutory and constitutional violations based either on a deliberate plan by defendants or on defendants' deliberate indifference, gross negligence, or reckless disregard for the safety, security and constitutional and statutory rights of plaintiffs.

**THIRD CAUSE OF ACTION**
**(Violation of Civil Rights -  42 U.S.C. § 1983)**
**Against All Individually Named Defendants**

51.  Defendants and each of them, acting under color of state law, did without probable cause and by use of excessive force unlawfully detain, arrest, batter, search, molest and write false reports about plaintiffs, and did do all of the above in a conspiratorial manner for the purpose of illegally obtaining criminal conviction(s) against plaintiffs and to conceal their own wrongdoing and did also do so to intimidate plaintiffs' witness(es) in said criminal prosecutions for the same improper purposes, all of which were intended with deliberate indifference of and reckless disregard for plaintiffs' constitutional rights under the First, Fourth and Fourteenth Amendments to the United

00021048.WPD

States Constitution. As a direct and proximate result of defendants' acts, plaintiffs sustained injury and damage as set forth herein.

### FOURTH CAUSE OF ACTION
(Violation of 42 U.S.C. §1985(2))
**Against All Individually Named Defendants**

52. Defendants, and two or more of them, in the State of California, County of Los Angeles, and City of Maywood-Cudahy, by reason of Defendants' animus against minorities, including plaintiffs' Latino heritage and invidious animus, conspired together to act and to fail and omit to act as hereinbefore alleged, for the purpose of (I) impeding, hindering, obstructing, and defeating the due course of justice in the State of California and County of Los Angeles, (ii) to deny plaintiffs their right to free speech, (iv) to deny equal protection of the laws to plaintiffs and (v) to subject plaintiffs' persons and property to unlawful search and seizure thereby depriving plaintiffs of immunities secured by the Constitution and the laws of the United States, including the First, Fourth and Fourteenth Amendments to the Unites States Constitution, by, *inter alia*, ordering, authorizing, maintaining, enforcing, tolerating, ratifying, permitting, acquiescing in, and/or applying the policies and practices set forth hereinabove. Defendants' conspiracy was and is motivated by animus directed against plaintiffs because of their race, color or national origin, and/or by the race, color, or national origin of persons with whom they associated, and/or by other class-based, invidiously discriminatory animus directed against plaintiffs. In furtherance of the conspiracy one or more of the defendants committed one or more of the overt acts set forth hereinabove which did in fact deprive plaintiff of equal rights, privileges or immunities.

53. Defendants, and each of them, purposefully, under color of law, planned and conspired to deny plaintiffs' equal protection of the laws in the following respects:

    a. to deny the right to be free from unreasonable search and seizure;

-23-

00021048.WPD

b. to deny the right not to be deprived of life, property or liberty without due process of law;

c. to deny the right of free speech;

d. to be free from use of excessive force.

54. By virtue of the foregoing, defendants, and each of them, violated 42 U.S.C. §1985(2).

55. As a direct and proximate result of the foregoing, plaintiffs have been damaged as recited above and demand and are entitled to the damages recited above, including, but not limited to, general and punitive damages (except entities) and attorney's fees.

## FIFTH CAUSE OF ACTION
### (Violation of 42 U.S.C. §1985(3))
### Against All Individually Named Defendants

56. By virtue of the foregoing, Defendants, and two or more of them, conspired for the purpose of:

a. depriving plaintiffs of (1) equal protection of the law; and (2) liberty and property without due process of law.

57. Defendants, and each of them, did and caused to be done, an act or acts in furtherance of the object of the conspiracy, whereby plaintiffs were deprived of the rights and privileges as set forth above.

58. As a direct and proximate result of the foregoing, plaintiffs are entitled to and demand damages against defendants, jointly and severally, as recited in the First and Second Causes of Action, including, but not limited to, general and punitive damages (except entities) and attorneys fees.

## SIXTH CAUSE OF ACTION
### (California Constitution, Article I, §§ 1, 7, and 13)
### Against All Defendants

59. The conduct of each defendant in detaining, searching, arresting, and assaulting

00021048.WPD

Plaintiffs and in threatening and in doing or failing to do the other wrongful acts herein alleged was done for the purpose of interfering with and attempting to interfere with Plaintiff's rights to freedom of expression, to be free from unreasonable invasions of their privacy and unreasonable search and seizure, and to be accorded due process and equal protection under Article I, §§ 1, 7 and 13 of the California Constitution.

**SEVENTH CAUSE OF ACTION**
**(California Civil Code §52.1)**
**Against All Defendants**

60. The conduct of each defendant in detaining, searching, and assaulting Plaintiffs and in threatening and in doing or failing to do the other wrongful acts herein alleged was done for the purpose of interfering with and attempting to interfere with Plaintiffs' rights under the First, Fourth and Fourteenth Amendments and Plaintiffs' right to freedom of expression, to be free from unreasonable invasions of his privacy and unreasonable search and seizure and accorded due process and equal protection under Article I, §§ 1, 7, 12, and 13 of the California Constitution, and for that reason violated Plaintiffs' rights under California Civil Code Section 52.1(b). Plaintiffs are informed and believe and thereon allege that the defendants' wrongful acts were done maliciously and criminally and for the purpose of inflicting injury on Plaintiffs.

61. As the proximate cause of defendants' and each of their conduct as hereinbefore alleged, plaintiffs have been damaged in an amount not presently ascertained, but subject to proof at trial.

62. Plaintiffs are informed and believe and thereon allege that Defendants' and each of their conduct was malicious, willful, fraudulent and oppressive, done with a conscious disregard for plaintiffs' rights and with the intent to injure plaintiffs, thereby justifying the award of exemplary damages (except for entities) in a sum to be determined according to proof.

00021048.WPD

1

2

### EIGHTH CAUSE OF ACTION
#### (California Civil Code Section 51.7)
#### Against All Defendants

3

4      63.  Plaintiffs are informed and believe and thereon allege that the conduct of each

defendant in using force upon and injuring Plaintiffs and in threatening and attempting to

5

use force upon and injure Plaintiffs, and in doing or failing to do the other wrongful acts

6

7      herein alleged was motivated by defendants' invidious racial and/or ethnic and/or other

impermissible animus toward Plaintiffs, and for that reason violated Plaintiffs' rights under

8

9      California Civil Code § 51.7.  Plaintiffs are informed and believe and thereon allege that

10      the defendants' wrongful acts were done maliciously and criminally and for the purpose

11      of inflicting injury on Plaintiffs.

12

### NINTH CAUSE OF ACTION
#### (Assault and Battery)
#### Against all Defendants

13

14      64.   At the date, time and location, defendants, and each of them, as either

15      employees, supervisors or employees in the course and scope of their duties intentionally

16      and maliciously abused plaintiffs by reason of the acts alleged herein above causing

17      plaintiffs, without provocation, necessity or lawful justification, to suffer said violations

18

19      of their civil rights.

20      65.  As a proximate result of the acts of defendants, and each of them, as herein

21      alleged, plaintiffs were compelled to expend money all to their damage in an amount

22      according to proof.

23      66.  As a proximate result of the acts of defendants, and each of them, plaintiffs

24      were injured in health, strength and activity, sustaining injuries to their bodies and shock

25      and injury to their nervous systems and persons; all of which injuries have caused

26      plaintiffs to suffer severe pain and mental anguish.

27

28      67.  As a further proximate result of the acts of defendants, and each of them,

00021048.WPD

plaintiffs were required to and/or did employ physicians and surgeons for medical examination, treatment and care of injuries, and did incur medical and incidental expenses. Plaintiffs did incur and will incur further treatment, the exact amount of which is unknown at this time.

68.   As a further proximate result of the acts of defendants, plaintiffs were prevented from attending to their usual occupations and thereby lost earnings and income.

69.   The acts of defendants, and each of them, were willful, malicious and oppressive, in conscious disregard of plaintiffs' known rights and thereby justify the awarding of exemplary damages (except entities) according to proof.

### TENTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)
### Against all Defendants

70.   Plaintiffs were entitled to the due care, service and protection of the entities and their officers and medical staff.

71.   On or about the dates alleged above and thereafter, Defendants caused the plaintiffs to be unlawfully detained, seized, beaten and/or otherwise abused without reasonable cause or justification.

72.   In doing the aforementioned acts, defendants conduct was intentional, outrageous, malicious, and done for the specific purpose of causing plaintiffs to suffer extreme emotional distress, indignity, fear, anxiety, and mental anguish.

73.   As a direct and proximate result of the foregoing, plaintiffs have suffered, and continue to suffer, severe mental, emotional and physical distress and are entitled to and demands damages against defendants.

### ELEVENTH CAUSE OF ACTION
### (Negligent Employment Civil Code §1714)
### Against Entities and Supervisor Defendants

74.   Defendant entities and supervisor defendants knew or in the exercise of due

00021048.WPD

care should have known, that individually named defendants and Does 1 Through 30 inclusive, and each of them, had a propensity, character trait, and practice for dishonesty, deception, abuse of authority, harassment, and violence without justification against plaintiffs and other members of the public.

75. At all times material herein, said Defendant entities and supervisors knew or with reasonable care should have known, that the aforedescribed traits of character, practices and propensities of defendants and Does 1 through 30 inclusive, and each of them, made them unfit to serve as law enforcement officers.

76. Notwithstanding such knowledge, Defendant entities and supervisors negligently and carelessly employed and retained and failed to properly supervise, train and control defendants and Does 1 through 30 inclusive, and each of them, as employees and assigned said defendants to duties which enabled each of them to abuse their authority, including but not limited to making unlawful detentions and arrests by use of excessive force, warrantless arrests, fabricating probable cause and crimes, causing the fraudulent and malicious criminal prosecution of innocent persons while purporting to act under the color of law.

77. As a proximate result of the negligent retention and supervision of defendant entities and supervisors and each of them, plaintiffs suffered damages and injuries, including but not limited to false arrests/detentions, beatings, malicious prosecutions, severe mental anguish, emotional distress, severe embarrassment, financial losses, all to the Plaintiffs' damage in a sum according to proof.

### TWELFTH CAUSE OF ACTION
### (Negligence/Civil Code § 1714))
### Against All Defendants

78. Plaintiffs allege that by the actions or omissions set forth above, all defendants failed to use and exercise reasonable care as is required by Civil Code § 1714. In

-28-

1  particular, defendants failed to exercise reasonable care in its conduct in the exercise of

2  their duties.

3      79.  As a proximate result of the negligence and carelessness of defendants, and

4  each of them, plaintiffs suffered damages as alleged above  in a sum according to proof.

5                          **INJUNCTIVE RELIEF**

6

7      80.  Plaintiffs are informed and believe and thereon allege that, unless enjoined, as

8  requested in the prayer, defendants will continue to engage in the unlawful acts and in the

9  policies and practices described above, in violation of the legal and constitutional rights

10  of the plaintiffs. Plaintiffs face the real and immediate threat of repeated and irreparable

11  injury and continuing, present adverse effects as a result of the unlawful misconduct,

12  policies and practices of the defendants.  Plaintiffs have no adequate and complete remedy

13  at law.

14                              **PRAYER**

15      Wherefore, Plaintiffs pray judgment against defendants and each of them, as

16  follows:

17

18  As to each cause of action at to each plaintiff as applicable:

19      1.  For general damages according to proof;

20      2.  For special damages according to proof;

21      3.  For statutory damages under Cal. Civ. Code §§ 52(b), 52.1(b) and under any

22  other applicable statute or theory;

23      4.  For punitive damages against each individual Defendant;

24      5.  For attorney's fees pursuant to 42 U.S.C. §1988, California Civil Code §52.1,

25  and under any other applicable statute or theory;

26      6.  For costs of suit;

27      7.  Declaring, pursuant to 28 U.S.C. §§ 2201-2202 that the acts, policies, rules,

28

00021048.WPD

regulations, practices, customs, and usages that the defendants engaged in as set forth above violate the legal and constitutional rights of the plaintiffs.

8. Permanently enjoining defendants and their agents, employees, and successors, and all persons in active concert or participation with defendants, from engaging in the unlawful and unconstitutional acts, policies, rules, regulations, practices, customs, and usages set forth above.

9. Placing the Maywood-Cudahy Police Department under the direct supervision and control of a receiver or special master to be appointed by the Court; directing the receiver or special master to review all existing written and unwritten policies and procedures of defendants with respect to the acts, policies, rules, regulations, practices, customs, and usages set forth above; directing the receiver or special master to modify, amend, or revoke, or to confirm and enforce, existing policies and procedures and to establish such new or additional written policies and procedures as may be necessary and proper; and directing the receiver or special master to implement and enforce appropriate written policies and procedures with respect to the following subjects, among others:

    a. Ensuring compliance with constitutional standards governing the use of firearms, the use of force, the conduct of searches, and the use of deadly force.

    b. Providing adequate training, certification, and periodic recertification of all officers in the lawful use of force, including firearms and other deadly force.

    c. Specifying departmentally approved weaponless control techniques, and providing for adequate training, certification, and periodic recertification of all officers in the use of such techniques.

    d. Ensuring that members of the public injured by officers receive prompt and appropriate medical care, and that their injuries are catalogued and recorded in police reports and by photographs of all such injuries.

e. Requiring that all persons in custody be transported to a hospital for examination and treatment by a medical doctor whenever:

    i.    the person sustains a head injury, strikes his or her head on a hard object, or sustains a blow to the head, regardless of how minor any such injury may appear;

    ii.    the person is choked or is subjected to any control hold involving the neck, regardless of whether or not the person is rendered unconscious;

    iii.    the person has any injuries that appear to require medical attention;

    iv.    the person requests medical treatment, regardless of whether or not the person has any apparent injuries.

f. Prohibiting the use of saps in any circumstances, and prohibiting the use of head strikes and strikes to other vital areas of the body by batons or flashlights, punches or kicks, except in cases where there is legal justification for the use of deadly force.

g. Requiring that searches be conducted in a manner which inflicts the least amount of damage necessary in order to conduct an adequate search; that officers be required to photograph or videotape the premises before and after each and every search; that officers return to their original location and condition all items displaced in any search; and that the Maywood-Cudahy Police Department pay for the repair or replacement of any property unnecessarily damaged or destroyed in the course of any search.

h. Recording in writing each instance in which an officer is involved in the use of force in arresting a suspect or in detaining any person, regardless of whether

an arrest is made.

    i.  Requiring that any officer who participates in or witnesses any incident involving the use of force by an officer shall prepare and submit a departmental report containing detailed information regarding the incident, including:

        i.     A full description of the actions of the suspect or member of the public which made the use of force necessary;

        ii.    A full description of the specific force used or observed by the officer;

        iii.   A full description of any injuries or complaints of injuries sustained by the suspect or member of the public, including photographs or videotapes of the suspect or member of the public;

        iv.   A full description of any medical treatment received by and any refusal of such treatment by the suspect or member of the public.

    j.  Establishing a system that allows an immediate on-duty supervisor to readily access a historical record of any officer who has used force in a period of at least the last 5 years, including the identity of the officer(s) involved in the use of force, the file number(s) of the report(s) in which the use of force is reported, and a description of the nature of the force used (*e.g.,* "intentional head strike with baton"; "accidental head strike with flashlight"); requiring periodic review of such records for patterns of unjustified use of force by officers and institution of disciplinary proceedings where appropriate; requiring review of such records whenever a supervisor prepares a departmental performance evaluation of any officer; and requiring that performance evaluations include documentation of any

patterns concerning the unjustified use of force.

k.  Providing that, in any situation in which deadly force has been used by an officer and death or serious injury has resulted, there shall be an administrative review of the use of force to determine whether it was in compliance with departmental policy and constitutional standards, and whether departmental policy should be modified in view of the circumstances surrounding the use of such force.

l.  Requiring that, in departmental investigations of officer-involved shootings, other use of deadly force by officers, or complaints of officer misconduct:

      i.    all percipient witnesses (including officers) be segregated from each other as soon as practicable after the incident;

      ii.    such witnesses not be permitted to discuss the incident with any other witness until after all witnesses have been interviewed by departmental investigators;

      iii.    such witnesses not be informed of the contents or substance of the statements of other witnesses until after all witnesses have been interviewed by departmental investigators; and

      iv.    all witness interviews, including interviews of involved officers, be fully and completely tape-recorded.

m.  Indexing by individual officer and maintaining files of complaints by members of the public, Cal. Govt. Code § 910 claims, and lawsuits concerning officer misconduct; adequately investigating such complaints, claims, and lawsuits; and using such files to monitor the conduct of officers.

n.  Requiring psychological testing and counseling of officers with a record of using unreasonable or excessive force, making false arrests, filing false charges,

-33-

engaging in related acts of dishonesty, or engaging in racially motivated misconduct.

o. Maintaining a promotional system which penalizes officers for instances of unjustified use of firearms or unjustified use of force, violence, sexual innuendo, dishonesty, racial or ethnic bias, or other misconduct.

p. Requiring dismissal of officers involved in instances of sexual misconduct, and/or repeatedly involved in instances of unjustified use of firearms or unjustified use of force, violence, dishonesty, racial or ethnic bias, or other misconduct.

q. Requiring that, where an investigation discloses any improper use of force by an officer, particularly improper use of force which causes serious bodily injury as defined in <u>Cal. Penal Code</u> § 243, that matter should be referred to the District Attorney's Office for consideration of filing a criminal complaint.

r. Requiring that, whenever any officer has been judicially determined to have engaged in a violation of constitutional or civil rights, whenever a monetary settlement has been made or a judgment has been rendered based on the use of excessive force by an officer, or whenever any arrest has been made as to which an officer claims to be the victim of a crime:

        i. a departmental investigation be conducted, regardless of any earlier investigation or the findings thereof;

        ii. The investigators review all evidence introduced at trial or provided to them by any person, and that they interview all known witnesses including plaintiff's trial experts, and interview plaintiff's counsel in any lawsuit alleging officer misconduct;

-34-

      iii.    a full report be made to the Chief of Police and to the receiver or special master with recommendations for or against disciplinary or criminal sanctions against the officer.

s. Directing that the defendants seek tangible ways (for example, through disciplinary measures) to establish the principle that racial and ethnic bias will not be tolerated within the Maywood-Cudahy Police Department, and that the defendants establish an adequate program of cultural awareness training and periodic retraining to eliminate racial or ethnic stereotypes for all officers.

t. Directing that the defendants seek tangible ways to establish the principle that gender bias and discrimination and sexual misconduct will not be tolerated within the Maywood-Cudahy Police Department, and that the defendants establish an adequate program of gender awareness training and periodic retraining to eliminate any and all gender discrimination and sexual misconduct.

10. For such other and further relief as the Court may deem proper.

DATED: May 29, 2007

**CYNTHIA ANDERSON-BARKER**
**ELLEN HAMMILL ELLISON**
**OLU ORANGE**
**ROBERT MANN**
**DONALD W. COOK**
ATTORNEYS AT LAW

By _____
                 Donald W. Cook
               Attorneys for Plaintiffs

00021048.WPD

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.

DATED: May 29, 2007

**CYNTHIA ANDERSON-BARKER
ELLEN HAMMILL ELLISON
OLU ORANGE
ROBERT MANN
DONALD W. COOK**
ATTORNEYS AT LAW

By_____
Donald W. Cook
Attorneys for Plaintiffs

00021048.WPD