O

# United States District Court
# Central District of California

| | |
|---|---|
| PABLO CAMARILLO,<br><br>                     Plaintiff,<br><br>     v.<br><br>CITY OF MAYWOOD, et al.,<br><br>                     Defendants.<br>_____<br><br><br>AND CONSOLIDATED CASES.<br>_____ | Case No. 2:07-cv-03469-ODW(SHx)<br><br><br>**ORDER GRANTING PLAINTIFFS'**<br>**ATTORNEYS' MOTION FOR**<br>**ATTORNEYS' FEES [346] AND**<br>**DENYING PLAINTIFFS' MOTION**<br>**TO STRIKE DECLARATION OF**<br>**JAMES P. SCHRATZ [375]** |

## I.    INTRODUCTION

In 2010, Plaintiffs' attorneys (hereafter "the Attorneys") filed a Motion for Attorneys' Fees requesting $1,025,000.  (ECF No. 273.)[1]  The Court awarded $473,138.24.  (ECF No. 315.)  The Attorneys appealed and the Ninth Circuit vacated the fee award and remanded with instructions for re-computation.  (ECF No. 335.)  In 2014, the Attorneys filed a revised Motion for Attorneys' Fees that included several reductions but again requested $1,025,000.  (ECF No. 346.)  For the reasons discussed below, the Court **GRANTS** the Attorneys' Motion and **AWARDS $242,141.35**. (ECF No. 346.)  The Court **DENIES** the Attorneys' Motion to Strike Portions of the Declaration of James P. Schratz.  (ECF No. 375.)

---

[1] Eight cases were consolidated for purposes of the Motion for Attorneys' Fees.  (ECF No. 267.)

## II.    FACTUAL BACKGROUND

### 1.    *2010 Motion for Attorneys' Fees*

The instant Motions arise from the settlement of a 2007 civil rights lawsuit in which twenty-one Plaintiffs sued the City of Maywood, its police department, and government officials for police misconduct and constitutional rights violations.  (ECF No. 1.)   In 2008, the Court granted Defendants' Motion to Sever, after which Plaintiffs filed nine separate lawsuits.  (ECF No. 43.)  Over the next two years, in response to various motions, the Court dismissed numerous claims and Defendants. (ECF Nos. 75, 84, 103, 124, 142, 149.)  In October 2010, the remaining seventeen Plaintiffs settled and, through their respective counsel, signed a Stipulation for Settlement.  (ECF No. 268.)  The Court retained jurisdiction to enforce the Settlement. (ECF No. 269.)  Pursuant to the Settlement, the Attorneys may seek attorneys' fees subject to Court approval.  (Mann Decl. Ex. A.)  The Settlement provides, in relevant part:

> Defendants…shall pay to [Plaintiffs]…the sum of $1,525,000 – inclusive [of] all fees and costs, $1,025,000 of which is subject to challenge by [Defendants]…before Judge Wright – as payment in full for their claims arising from the events described in their complaints, divided as follows: $500,000 to all Plaintiffs, no more than $1,000,000 in fees to be determined via fee application by the Court, and $25,000 in fees (also subject to objection by [Defendants]) for work done by all [Plaintiffs'] counsel on fee application itself.

*Id.*

In November 2010, the Attorneys filed a Motion for Attorneys' Fees requesting $1,025,000.  (ECF No. 273.)  They provided a chart that purportedly showed the hours worked and prevailing market rate for each attorney and paralegal.

/ / /

/ / /

| Legal Worker | Hours | Rate | Total |
|---|---|---|---|
| Paul Hoffman (attorney) | 57.8 | $750 | $43,350 |
| Robert Mann (attorney) | 250.8 | $710 | $178,068 |
| Donald W. Cook (attorney) | 422.05 | $650 | $274,320 |
| E. Thomas Barham (attorney) | 16 | $650 | $10,400 |
| Cynthia Anderson-Barker (attorney) | 874.1 | $550 | $480.755 |
| Samantha Koerner (attorney) | 574.20 | $550 | $315,810 |
| Ellen Hammill Ellison (attorney) | 411.54 | $550 | $226,347 |
| Olu K. Orange (attorney) | 31 | $475 | $14,725 |
| Colleen Flynn (attorney) | 119.5 | $400 | $47,800 |
| Victoria Don (attorney) | 157 | $250 | $39,250 |
| Patricia Orantes-Gallegos (paralegal) | 1,051.41 | $235 | $247,081 |
| Bian Gormley (paralegal) | 2.6 | $235 | $611 |
| Dinorah Pinelo (paralegal) | 31.3 | $235 | $7,355 |
| Carol Tokeshi (paralegal) | 53.05 | $235 | $12,467 |
| Victoria Don (paralegal/law student) | 254.1 | $125 | $31,762 |
| Jon Cotton (paralegal) | 24.5 | $225 | $5,512.50 |
| **Lodestar total:** | | | **$1,455,339** |

(Mot. 5.)[2]

Defendants contended that the Court should reduce the hourly rates and that the Attorneys did not provide evidence of prevailing market rates. (Opp'n 9–11.) Defendants further contended that the Court should eliminate: unreasonably expended and excessive hours, tasks attorneys should have delegated to secretaries, miscellaneous improper billing, vague entries, and paralegal billing. (*Id.* at 14–20.)

---

[2]  Victoria Don has two entries because she was a paralegal while attending law school and later became an attorney.

1    Defendants noted that around the same time that attorney Ellen Hammill Ellison

2    requested an hourly rate of $300 in a state court filing, she requested $550 in the

3    Motion.  (*Id*. at 13 Ex. D.)  Defendants questioned on what legitimate basis Ellison

4    could file a declaration with the Los Angeles Superior Court in June 2010 stating that

5    she believed her rate was $300, and then claim to a federal court in November 2010

6    that she believed her rate was $550.[3]  (*Id*.)  Similarly, Defendants noted that Samantha

7    Koerner sought sanctions from this Court in the instant action and stated her hourly

8    rate was $490, but requested $550 in the Motion.  (*Id*., Ex. E.)  The Reply did not

9    address this issue.

10    Using the hourly rate the Attorneys requested, Defense fee expert James P.

11    Schratz analyzed billing records and calculated a significantly higher lodestar—

12    $1,935,626.50 compared to the Attorneys' $1,455,399.  (Schratz Decl.)  The day after

13    Defendants filed their Opposition, attorney Donald W. Cook submitted a declaration

14    correcting the chart.  (Cook Decl.)  Only after reading Defendants' Opposition did

15    Cook realize that he used a decimal instead of a comma when inputting Anderson-

16    Barker's total.  (*Id*.)  He wrote $480.755 instead of $480,755.  (*Id*.)  Cook's error

17    resulted in an almost-half a million dollar miscalculation.  (*Id*.)

18

19    2.    *District Court's Decision*

20    The Court reduced hours across-the-board by 35 percent to account for:

21    inappropriate and ambiguous billing format, billing entries unrelated to the Maywood

22    cases, impossible entries, improper entries, clerical entries, and billing for travel time.

23    (ECF No. 315.)  The Court reduced hours by an additional 20 percent to account for

24    numerous problems with the billing records.  (*Id*.)

25    The Court reduced all attorney rates by 25 percent and adopted the lower

26

27    ___

[3]   According to Ellison's Declaration, since 1991 she has been "focused exclusively in civil rights
28    litigation, specifically police misconduct." (ECF No. 274.)   The Court finds the state case
sufficiently similar and the rate requested relevant.

paralegal rates provided in the Declaration of Barrett Litt, the Attorneys' fee expert. (*Id.*)  The Court concluded that the Attorneys failed to meet their burden and establish that their requested fees reflected the prevailing market rates in the community.  (*Id.*) This conclusion was based on: (1) the Attorneys' exclusive reliance on personal affidavits and Litt's Declaration; (2) the failure "to demonstrate the quality of representation that would be expected from attorneys charging such high rates;" (3) attorneys receiving rates months prior to filing the Motion that were lower than the rates requested in the Motion; and (4) reliance on factually dissimilar cases to support the requested rates.  (*Id.*)

The Court did not address whether the Attorneys should receive a state-law multiplier and declined to award $25,000 for preparing the Motion "given the myriad of problems in [the Attorneys'] presentation of their Motion."  (*Id.*)  Ultimately, the Court awarded $473,138.24.  (*Id.*)

### 3.    Ninth Circuit's Decision

The Attorneys appealed to the Ninth Circuit Court of Appeals.  (ECF No. 318.) In November 2013, the Ninth Circuit vacated the fee award and remanded for re-computation.  (ECF No. 335.)  The Ninth Circuit determined that the District Court: erroneously applied across-the-board cuts to the lodestar, failed to find a reasonable hourly rate on which to compute the lodestar, declined to award a state-law multiplier, and declined to award fees for work performed on the Motion.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).

Per Ninth Circuit instructions, the District Court must: (1) compute the fee award using a reasonable hourly rate based on the "prevailing market rates in the relevant community;" (2) provide a "clear and concise explanation" if the Court reduces the number of hours or lodestar by more than 10 percent; (3) "analyze and explain whether [the Attorneys] should receive a state-law multiplier;" and (4)

"employ the lodestar method" for determining a reasonable fee for the Attorneys' work on the Motion. *Id.* at 1209–1211.

### 4.    *2014 Motion for Attorneys' Fees*

In May 2014, the Attorneys submitted a revised Motion for Attorneys' Fees. (ECF No. 346.)  They conclude that they have been awarded $473,138.24 and only $551,861.76 is currently in dispute.  (Mot. 1.)

They also submitted "additional declarations which address the issues raised by the Ninth Circuit." (ECF No. 336.)  Defendants argued that the Attorneys should not be given another opportunity to submit evidence in support of the 2010 Motion.  (ECF No. 338.)  The Court granted leave to submit additional declarations on the grounds that "the Court would be aided by the parties rebriefing the attorneys' fees issue, and by presentation of any additional relevant or clarifying evidence."  (ECF No. 345.)

The Attorneys re-submitted billing records that, according to the Attorneys, correct the entries the district court took issue with in 2011.  (Mot. 4.)  Examples of such entries include a paralegal billing sixty hours in one day, the same paralegal billing 22.95 hours in a day on numerous occasions, and another paralegal billing 22.95 hours in a day.  (Order 21–22.)  After filing the 2010 Motion, reading the Court's Order, appealing to the Ninth Circuit, and reading the Ninth Circuit's Opinion, the Attorneys attempted to correct obviously inaccurate billing.

In the re-submitted billing records, attorney time records are grouped by case rather than individual attorney; time the Court thought unnecessary, such as Maywood clinic time and vehicle towing time, was eliminated; time expended on other matters or involving persons the Court thought irrelevant was explained as reasonably necessary to litigate the cases that settled; and the errors in billing records the Court noted were corrected or explained.  (Mot. 4)

The Attorneys provided a chart that purportedly shows the lodestar "[a]fter

deducting for time identified above, and correcting for certain errors."  (*Id*. at 6.)

| Attorney/Paralegal | Rate | Hours | Lodestar |
|---|---|---|---|
| Cynthia Anderson-Barker (attorney) | $550 | 855.90 | $470,475 |
| Colleen Flynn (attorney) | $400 | 110.90 | $44,360 |
| Donald W. Cook (attorney) | $650 | 364.85 | $237,152.50 |
| Ellen Ellison (attorney) | $550 | 611.20 | $336,160 |
| Olu Orange (attorney) | $475 | 31.00 | $14,725 |
| Paul Hoffman (attorney) | $750 | 44.90 | $33,675 |
| Robert Mann (attorney) | $710 | 248.40 | $176,364 |
| Samantha Koerner (attorney) | $550 | 550.80 | $303,940 |
| Thomas Barham (attorney) | $650 | 16.00 | $10,400 |
| Victoria Don (attorney) | $250 | 71.80 | $17,950 |
| Bian Gormley (paralegal) | $235 | 2.60 | $611 |
| Carol Tokeshi (paralegal) | $235 | 53.05 | $12,466.75 |
| Dinorah Pinelo (paralegal) | $235 | 31.30 | $7,355.50 |
| Jon Cotton (paralegal) | $225 | 24.50 | $5,512.50 |
| Patricia Orantes-Gallegos | $235 | 942.01 | $221,372.35 |
| Victoria Don (paralegal) | $125 | 250.10 | $31,262.50 |
| **Lodestar total:** | | **4,209.31** | **$1,923,781.80** |

(*Id*. at 7-8.)[4] They also provided a chart that cuts an additional 10 percent across all hours "to account for possibly unnecessary services (duplication of efforts; time not reasonably expended)."  (*Id*. at 7.)

---

[4] The Attorneys submitted separate charts for attorneys and paralegals.  The Court combined the charts into one.

Defendants contend that there is currently no fee award because the Ninth Circuit vacated the 2011 award with instructions for re-computation.  (Opp'n 2.)  However, Defendants reason that the Attorneys may only obtain $551,861.76 because that is all they requested in the 2014 Motion.  (*Id.*)

Similar to their 2010 Opposition, Defendants contend that the Court should reduce the hourly rates and that the Attorneys did not provide evidence of prevailing market rates.  (*Id.* at 5–8.)  They recommend the Court eliminate: vague entries, unreasonably expended hours, non-settlement case hours, irrelevant claims, and miscellaneous improper billing.  (*Id.* at 10–18.) According to Defendants, the declarations do not support the Motion and the Attorneys fail to provide evidence of small law firm market rates.  (*Id.* at 10–13.)  They also note that except Victoria Don, the Attorneys did not re-submit the time and fees of paralegals.  (*Id.* at 15.)  Therefore, they contend, "the same deficiencies that the auditor and the District Court found" apply to the time and fees of the paralegals.  (*Id.*)

     5.    *Motion to Strike Declaration of James P. Schratz*

The Attorneys argue that the Court should strike the Declaration of James P. Schratz because it contains legal argument, fails to provide a clear and concise explanation of reductions to the number of hours or lodestar by more than 10 percent, and fails to use required methodology to determine rates.  (Mot. 2–5.)

Defendants contend that the Court should deny the Motion because the arguments against the Declaration do not fall under the enumerated circumstances in which courts may grant a Motion to Strike.  (Opp'n 3–4.)

## III.    LEGAL STANDARD

### A.    Motion for Attorneys' Fees

By enacting 42 U.S.C. § 1988, Congress "recognized that private enforcement of civil rights legislation relies on the availability of fee awards."  *Moreno v. City of*

*Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).   To minimize the risk of overcompensation, the district court should award "only the fee that it deems reasonable."   *Id*. (citing *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983)).   In determining what fee is reasonable, "the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases, and avoiding a windfall to counsel."   *Moreno*, 534 F.3d at 1111 (citing *City of Riverside v. Rivera*, 477 U.S. 561, 579–80 (1986); *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

The court must compute the "lodestar" by multiplying the hours reasonably expended on litigation by a reasonable hourly rate.   *United Steelworkers of Am. v. Phelps Dodge Corp*., 896 F.2d 403, 406 (9th Cir. 1990) (citing *Hensley*, 461 U.S. at 433; *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)).   A reasonable hourly rate "compensate[s] counsel at the prevailing rate in the community for similar work; no more, no less."   *Moreno*, 534 F.3d at 1111.

*Kerr* factors are used in the preliminary determination of the lodestar.   *Id*.   The factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.   *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).   These factors are "intended to provide district courts with guidance" when adjusting the lodestar and "were never intended to be exhaustive or exclusive."   *Chalmers*, 796 F.2d at 1211.

The court may reduce the number of hours or lodestar by more than 10 percent but must provide a clear and concise explanation for the percentage(s) selected.   *See*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992); *Moreno*, 534 F.3d at 1112. The court may adjust the award upward or downward based on additional factors that bear upon reasonableness. *Chalmers*, 796 F.2d at 1212; *Kerr*, 526 F.2d at 70; *Hensley*, 461 U.S. at 434. However, "the *Kerr* factors are largely subsumed within the initial calculation of reasonable hours expended at a reasonable hourly rate, rather than the subsequent determination of whether to adjust the fee upward or downward." *Hensley*, 461 U.S. at 434 n.9.

Fee applicants bear the burden of proof and must "submit evidence supporting the hours worked and rates claimed." *Id*. at 433.

**B.    Motion to Strike**

The court may strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The decision whether to grant a motion to strike is made at the court's discretion. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010.) Rule 12(f) motions to strike are generally disfavored. *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996); *see also Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000).

## IV.    DISCUSSION

**A.    Motion for Attorneys' Fees**

Without citing any supporting authority, the Attorneys conclude that they have been awarded $473,138.24 and only $551,861.76 is currently in dispute. (Mot. 1.) The Ninth Circuit vacated the Court's 2011 fee award and remanded with instructions for re-computation. Therefore, there is no fee award. The Court rejects Defendants' contention that the Attorneys' may only obtain $551,861.76 because that is all they requested in the 2014 Motion. Since 2010, the Attorneys have argued that they are entitled to the $1,025,000 maximum allowed under the Settlement. The Court will re-compute the entire fee award and determine whether $1,025,000 is reasonable.

1        *1.     Hours Reasonably Expended On Litigation X Reasonable Rate*

2        "The most useful starting point for determining the amount of a reasonable fee

3 is the number of hours reasonably expended on the litigation multiplied by a

4 reasonable hourly rate." *Hensley*, 461 U.S. at 433. This method of calculation

5 provides the court "an objective basis on which to make an initial estimate of the

6 value of a lawyer's services." *Id*.

7        *a)     Hours Reasonably Expended On Litigation*

8        Attorneys requesting a fee award "should make a good faith effort to exclude

9 from a fee request hours that are excessive, redundant, or otherwise unnecessary, just

10 as a lawyer in private practice ethically is obligated to exclude such hours from his fee

11 submission." *Id*. at 434. "Hours that are not properly billed to one's *client* also are

12 not properly billed to one's *adversary* pursuant to statutory authority." *Id*. (original

13 emphasis) (citing *Copeland v. Marhsall*, 641 F.2d 880, 891 (1980)). The district court

14 "should exclude from this initial fee calculation hours that were not 'reasonably

15 expended.'" *Id*. at 433–434.

16

17        "[W]hen faced with a massive fee application the district court has the authority

18 to make across-the-board percentage cuts in either the number of hours claimed or in

19 the final lodestar figure 'as a practical means of trimming the fat from a fee

20 application.'" *Gates*, 987 F.2d at 1399 (quoting *New York State Ass'n for Retarded

21 Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)). "Despite the 'concise but

22 clear' requirement, in cases where a voluminous fee application is filed in exercising

23 its billing judgment the district court is not required to set forth an hour-by-hour

24 analysis of the fee request." *Gates*, 987 F.2d at 1399 (citing *Jacobs v. Mancuso,* 825

25 F.2d 559, 562 (1st Cir. 1987); *In re "Agent Orange" Product Liability Litigation,* 818

26 F.2d 226, 237–238 (2d Cir. 1987) ("no item-by-item accounting of the hours

27 disallowed is necessary or desirable"); *Ohio–Sealy Mattress Mfg. Co. v. Sealy Inc.,*

28

776 F.2d 646, 657–58 (7th Cir. 1985)).

In 2010, the Attorneys submitted billing records grouped by attorney. This format made it impossible for the Court to reasonably determine whether excessive, redundant, or otherwise unnecessary hours were billed.  The Attorneys have re-submitted billing records grouped by case rather than attorney.  They provided the following description of their billing practice:

> Where time is fairly allocable *across all the cases, as is the case in many circumstances*, Plaintiffs explain why this is appropriate. For example, the depositions of some high level police officials was [*sic*] conducted once for all cases rather than multiple times. In such circumstances, it is reasonable to allocate this time across all of the cases. The same is true of time spent on developing Plaintiffs' *Monell* theories as this work was directly relevant to all the cases.

Mot. 4. (citing Cook Decl. ¶¶ (A)-(B), 14–27, 34) (emphasis added).

The American Bar Association and California Bar agree that billing for work performed on multiple matters at the same time presents serious ethical considerations.   The ABA Committee on Ethics and Professional Responsibility explained that:

> A lawyer who spends four hours of time on behalf of three clients has not earned twelve billable hours. A lawyer who flies for six hours for one client, while working for five hours on behalf of another, has not earned eleven billable hours. A lawyer who is able to reuse old work product has not re-earned the hours previously billed and compensated when the work product was first generated. Rather than looking to profit from fortuity of coincidental scheduling, the desire to get work done rather than watch a movie, or the luck of being asked the identical question twice, the lawyer who has agreed to bill solely on the basis of time spent is obliged to pass the benefits of these economies on to the client. The practice of billing several clients for the same time or work product, since it results in the earning of an

unreasonable fee, therefore is contrary to the mandate of the
Model Rules.

ABA Comm. On Ethics and Prof'l Responsibility, Formal Op. 93-379 (1993) (citing

Model Rule 1.5).  According to the State Bar of California Standing Committee on

Professional Responsibility and Conduct:

> Where an attorney has performed work on more than one
> matter at the same time, the attorney is required to satisfy
> the requirements of Business and Professions Code section
> 6148, rule 4-200 of the California Rules of Professional
> Conduct, and the requirements mandated by the attorney's
> fiduciary duties to both clients. Accordingly, *an attorney
> may not bill a full hourly rate to more than one client for the
> same time period, or bill one client a multiple of that hourly
> fee for the same time period*, unless the attorney has:
> disclosed this billing practice at the outset of the
> relationship; obtained client consent; and made sure that the
> fee charged to each client is not 'unconscionable' as that
> term is defined under rule 4-200 of the California Rules of
> Professional Conduct.

Cal. State Bar Standing Comm. On Prof'l Responsibility and Conduct, Formal Op.

1996-147 (1996) (emphasis added).

When litigating the Maywood cases, the Attorneys performed work for one case

and allocated time "across all the cases."  That is, they—and the paralegals whose

work and billing they supervised—performed once and billed at least eight times.[5]

Nowhere do the Attorneys say that they limited this practice to any particular task.  In

fact, they explain that time was "fairly allocable across all the cases [. . .] in many

circumstances."  From this, the Court can only conclude that the Attorneys and their

subordinates regularly performed once and billed eight times.  In light of the

---

[5] Eight cases settled and were consolidated for purposes of the 2010 Motion.  Based on the
Attorneys' explanation, the Court finds that billing "across all the cases" means billing the *entire*
time, not a fraction, to these cases.

13

Attorneys' flawed billing practice, the Court now understands how some employees were able to bill 60 and 22.95 hours in a day.

The Attorneys cite no authority that permits this billing practice because it is expressly contemplated and prohibited by the ABA and Model Rule of Professional Conduct.  Just as "[a] lawyer who spends four hours of time on behalf of three clients has not earned twelve billable hours," a lawyer who conducts one deposition has not earned compensation for eight.

The California Bar requires that attorneys who "bill a full hourly rate to more than one client for the same time period, or bill one client a multiple of that hourly fee for the same time period [. . .] disclose[] this billing practice at the outset of the relationship; obtain[] client consent; and [make] sure that the fee charged to each client is not 'unconscionable.'"  There is no evidence that the Attorneys complied with any of these requirements.

The Court recognizes that generally it "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno*, 534 F.3d at 1112.  However, in the instant action, the Attorneys have demonstrated that deference to their professional judgment would be contrary to the ABA, Model Rules, and California Bar.

*b) Reduction to Hours*

Because the Attorneys performed once and billed eight times in many circumstances, the Court **REDUCES the requested hours by 7/8 or 87.5 percent**. This reduction applies to all hours.  "[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage hours either in the number of hours or in the final lodestar figure." *Gates*, 987 F.2d at 1399. Furthermore, the Court finds that a 10 percent "haircut" would not adequately address the Attorneys' billing practice and any other number would be arbitrary.

14

1    The Court acknowledges that its reduction is significant, but the Attorneys
2    have the burden and proof and failed to submit evidence supporting the hours worked.
3    In fact, the evidence they submitted impugned their requested hours and overall
4    billing judgment.  The Court does not apply any additional reductions to the hours and
5    finds that the 7/8 reduction adequately accounts for any other billing issues that may
6    have carried over from the 2010 Motion to 2014.[6]

7        c)  *Prevailing Market Rate*

8        A reasonable hourly rate is the "rate prevailing in the community for similar
9    work performed by attorneys of comparable skill, experience, and reputation."
10   *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  "[T]he burden
11   is on the fee applicant to produce satisfactory evidence—in addition to the attorneys'
12   own affidavits—that the requested rates are in line with those prevailing in the
13   community for similar services by lawyers of reasonably comparable skill, experience
14   and reputation; a rate determined in this manner will be normally deemed to be
15   reasonable, and is referred to, for convenience, as the prevailing market rate."  *Sierra*
16   *Club v. EPA*, 625 F. Supp. 2d 863, 866 (N.D. Cal. 2005).  "Once the fee applicant has
17   proffered such evidence, the opposing party must produce its own affidavits or other
18   evidence to rebut the proposed rate."  *Cortes v. Metro Life Ins. Co.*, 308 F. Supp. 2d
19   1125, 1229 (C.D. Cal. 2005) (citing *United Steelworkers of Am.*, 896 F.2d at 407).

20       The Attorneys filed nine declarations in support of the reasonableness of their
21   requested rates.   (ECF No. 347.)    While these declarations do not contain
22   systematically obtained information, they help guide the Court in selecting an hourly

---

[6] These issues include time the Court thought unnecessary, such as Maywood clinic time and vehicle towing time, time expended on other matters or involving persons the Court thought irrelevant to the Maywood case, impossible and improbable paralegal billing entries, and miscalculations the Attorneys later corrected or explained.

rate.[7]  The declarants are licensed practitioners and have extensive experience with civil rights litigation.  Many are also familiar with the rates of civil rights attorneys in Los Angeles.   The Court finds that except Ellen Hammill Ellison and Samantha Koerner, the Attorneys have produced satisfactory evidence that the requested rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Sierra Club*, 625 F. Supp. 2d at 866.

Ellison requested $300 per hour around the filing of the 2010 Motion from a state court, and Koerner previously requested $490 per hour from *this* Court in *this* action.  The Attorneys fail to explain how, within months, Ellison and Koerner's rates each increase to $550.  Therefore, the Court **SELECTS the hourly rate requested for all attorneys except Ellison and Koerner** who shall each receive their previously requested hourly rates of $300 and $490, respectively.

In the 2014 Motion, the Attorneys did not provide additional evidence for the rates of paralegals.  As a result, the Court must rely on Litt's Declaration submitted in support of the 2010 Motion. Litt is a licensed practitioner and has extensive experience and familiarity with civil rights litigation.  He is also familiar with the rates of junior and experienced paralegals.   The Court finds that the Attorneys have produced satisfactory evidence for the requested rates and no reductions are necessary. Therefore, the Court **SELECTS the hourly rate requested for all paralegals**.

Applying the reductions to hours and rates discussed above results in the following calculations:

/ / /

/ / /

/ / /

---

[7] The Court does not rely on the Attorneys' declarations as expert testimony and **OVERRULES** Defendants' objections.

16

| Attorney/Paralegal | Hours (7/8 Reduction) | Rate | Lodestar |
|---|---|---|---|
| Cynthia Anderson-Barker (attorney) | 106.99 | $550 | $58,844.50 |
| Colleen Flynn (attorney) | 13.86 | $400 | $5,544.00 |
| Donald W. Cook (attorney) | 45.61 | $650 | $29,646.50 |
| Ellen Ellison (attorney) | 76.40 | $300 | $22,920.00 |
| Olu Orange (attorney) | 3.87 | $475 | $1,838.75 |
| Paul Hoffman (attorney) | 5.61 | $750 | $4,207.50 |
| Robert Mann (attorney) | 31.05 | $710 | $22,045.50 |
| Samantha Koerner (attorney) | 68.85 | $490 | $33,736.50 |
| Thomas Barham (attorney) | 2.00 | $650 | $1,300.00 |
| Victoria Don (attorney) | 8.97 | $250 | $2,242.50 |
| Bian Gormley (paralegal) | .32 | $235 | $75.20 |
| Carol Tokeshi (paralegal) | 6.63 | $235 | $1,558.05 |
| Dinorah Pinelo (paralegal) | 3.91 | $235 | $918.85 |
| Jon Cotton (paralegal) | 3.06 | $225 | $688.50 |
| Patricia Orantes-Gallego (paralegal) | 117.75 | $235 | $27,671.25 |
| Victoria Don (paralegal) | 31.23 | $125 | $ 3,903.75 |
| **Lodestar total:** | **525.85** | | **$217,141.35** |

The Court applies the 7/8 reduction to the hours without the Attorneys' proposed 10 percent reduction.

/ / /

/ / /

*2.     State Law Multiplier*

The Attorneys argue that if the Court's lodestar calculation is less than the $1,025,000 maximum allowed under the Settlement, they are entitled to a "multiplier of at least 2.0" under California law.  (Mot. 14.)

Risk of loss or contingency-fee multipliers are not available under federal fee-shifting statutes, but California law allows prevailing plaintiffs to recover an enhancement to the fee award as compensation for the risk of loss.  *Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

The Attorneys cite several cases in which courts have awarded a 2.0 multiplier. (Mot. 16.)  However, they provide no factual information.  The Court cannot compare these cases to the instant action and determine whether the latter is sufficiently similar and warrants a 2.0 multiplier.   The Attorneys argue that the Ninth Circuit "has previously found that a 2.0 multiplier reflected the expected market return for contingent fee cases."  Again, they provide no factual information.  The mere fact that the Ninth Circuit has upheld a 2.0 multiplier in *some* cases does not persuade the Court that one should be awarded in *this* case.  In fact, one case the Attorneys cite does just the opposite.

In *Fadhl v. City and County of San Francisco*, 859 F.2d 649, 650 (9th Cir. 1988):

> The district court found that contingent fees that yield approximately two times the ordinary hourly rate for time expended is the return expected by lawyers in the relevant market (Title VII cases in San Francisco), and that Fadhl would have faced severe difficulties in obtaining an attorney without a contingency fee agreement that held out the possibility of substantial enhancement over the hourly rate.

The plaintiff brought a sexual harassment suit in San Francisco and the district court "found the fact that Fadhl approached 35 lawyers before she found one who would represent her was strong support for the proposition that in the absence of risk

1    enhancement, she would have faced substantial difficulties in retaining an attorney."

2    *Id.* at 651.  There is no evidence that any Plaintiffs in the instant action encountered

3    similar difficulty obtaining legal representation.

4         The Court finds that **the Attorneys are NOT entitled to a state law**

5    **multiplier**.

6         *3.     Fee Award for Motion*

7         Per Ninth Circuit instructions, the Court must "employ the lodestar method" for

8    determining a reasonable fee for the Attorneys' work on the Motion.  *Gonzalez*, 729

9    F.3d at 1209–1211.   The Court must multiply the number of hours reasonably

10   expended on the litigation by the prevailing market rate.

11        The Attorneys provided the following chart that purportedly shows the hours

12   worked and prevailing rate for each attorney who worked on the Motion:

13

| Attorney | Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| Cynthia Anderson-Barker | $550 | 6.40 | $3,520.00 |
| Donald Cook | $650 | 198.45 | $128,992.50 |
| Ellen Ellison | $550 | 2.50 | $1375.00 |
| Paul Hoffman | $750 | 12.90 | $9,675.00 |
| Robert Mann | $710 | 2.40 | $1,704.00 |
| Samantha Koerner | $550 | 73.70 | $40,535.00 |
| Victoria Don | $250 | 84.30 | $21,075.00 |
| **Lodestar total:** | | | **$206, 876.50** |

(Cook Decl. ¶ 36.)

         The  hours  are  based  on  the  billing  records  submitted  in  2010.  (*Id*.  ¶  37.)

Despite knowing that they would request compensation for work on the 2010 Motion,

the Attorneys failed to distinguish Motion and non-Motion related tasks.  The Court will not sift through billing entries to decipher whether tasks relate to the Motion.

Therefore, because the billing records do not distinguish Motion and non-related tasks, the Court can only conclude that the same deficiencies that permeated the Attorneys' billing during litigation and settlement also affect the Motion.  The Court **REDUCES the requested hours by 7/8 or 87.5 percent**.

For the reasons discussed above, the Court **SELECTS the hourly rate requested for all attorneys except Ellison and Koerner**, who each receive $300 and $490, respectively.

Applying the reductions and rates discussed above results in the following:

| Attorney | Hourly Rate | Hours (7/8 Reduction) | Lodestar |
|---|---|---|---|
| Cynthia Anderson-Barker | $550 | .80 | $440.00 |
| Donald Cook | $650 | 24.80 | $16,120 |
| Ellen Ellison | $300 | .31 | $93.00 |
| Paul Hoffman | $750 | 1.61 | $1,207.50 |
| Robert Mann | $710 | .30 | $213.00 |
| Samantha Koerner | $490 | 9.21 | $4,512.90 |
| Victoria Don | $250 | 10.50 | $2,625.00 |
| **Lodestar total:** | | **47.53** | **$25,211.40** |

In sum, the Court **GRANTS** the Attorneys **$$217,141.35** for work on the cases and the **$25,000** maximum allowed under the Settlement for work on the Motion, which totals: **$242,141.35**.

**B.      Motion to Strike**

The Attorneys argue that the Court should strike portions of the Declaration of Defense fee expert James P. Schratz because they contain legal argument and fail to comply with the Ninth Circuit mandate.

The Court is not persuaded that Rule 12(f) applies.  Rule 12(f) states that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, or scandalous matter."  Fed. R. Civ. P. 12(f).  However, the Attorneys make no attempt to explain how the disputed portions of the Declaration constitute "an insufficient defense" or "redundant, immaterial, or scandalous matter."

The Court is also not persuaded by the Attorneys' mischaracterizations.  They argue that portions of the Declaration contain "legal argument."   These portions summarize the procedural history of the Maywood cases and explain the bases for Schratz's proposed fee reductions.  The Court considers this relevant background and foundational information.  The Attorneys next argue that Schratz must provide a clear and concise explanation of reductions to the number of hours or lodestar by more than 10 percent and use specific methodology to determine rates.  Nowhere in *Gonzalez* does the Ninth Circuit state that its mandate applies to experts.  Expert opinion is one of many sources to which the Court may look for guidance in determining a reasonable fee award.  Only the Court is bound by the Ninth Circuit's decision.

Therefore, the Court **DENIES the Attorneys' Motion to Strike Portions of the Declaration of James P. Schratz**.

/ / /

/ / /

/ / /

/ / /

/ / /

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Attorneys' Motion and **AWARDS $242,141.35**.  (ECF No. 346.)  The Court **DENIES** the Attorneys' Motion to Strike Portions of the Declaration of James P. Schratz.  (ECF No. 375.)

**IT IS SO ORDERED.**


February 4, 2015

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**